UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE MONSTER WORLDWIDE, INC., SECURITIES LITIGATION | Case No. 07 CV 2237 (JSR) |
|---|---|

**LEAD PLAINTIFFS'
MEMORANDUM OF LAW IN OPPOSITION TO
THE GOVERNMENT'S MOTION FOR A STAY OF CERTAIN DISCOVERY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 6

THE GOVERNMENT'S MOTION FOR A STAY SHOULD BE DENIED ............................... 6

    1.    Private Interests of and Prejudice to Lead Plaintiff and the Class ................................ 7

    2.    Interests of Court and Public........................................................................................ 10

    3.    Interests of Persons Not Party to the Civil Litigation .................................................. 11

    4.    Interests of Defendants ................................................................................................ 13

CONCLUSION......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Connecticut ex rel. Blumenthal v. BPS Petroleum Distributors, Inc.*,
   Civ. No. 3:92-CV-00173(WWE), 1991 WL 177657 (D. Conn. July 16, 1991)................7, 8, 9

*In re Grand Jury Subpoena*,
   920 F.2d 235 (4th Cir. 1990) ..........................................................................................6

*Horn v. District of Columbia*,
   210 F.R.D. 13 (D.D.C. 2002)..........................................................................................7

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
   No. 05 Civ. 2985(HB), 2005 WL 1705244 (S.D.N.Y. July 22, 2005) ...........................7, 8, 10

*Jackson v. Johnson*,
   985 F. Supp. 422 (S.D.N.Y. 1997)..................................................................................6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)........................................................................................................7

*SEC v. Beacon Hill Asset Management LLC*,
   No. 02 Civ. 8855(LAK), 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ....................................11

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir.), *cert. denied,* 449 U.S. 993 (1980) ....................................6

*SEC v. First Fin. Group of Tex., Inc.*,
   659 F.2d 660 (5th Cir. 1981) ......................................................................................6, 7

*SEC v. Jones*,
   No. 04 Civ. 4385 (RWS), 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005)................................7

*SEC v. Saad*,
   384 F. Supp. 2d 692 (S.D.N.Y. 2005).........................................................................6, 13

*SEC v. Treadway*,
   No. 04 Civ. 3464(VM)(JCF), 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) ......................9, 10

*In re Scrap Metal Antitrust Litig.*,
   No. 1:02-CV-0844, 2002 WL 31988168 (N.D. Ohio Nov. 7, 2002)..................................8, 10

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
   175 F. Supp. 2d 573 (S.D.N.Y. 2001).......................................................................6, 12, 13

*United States v. Banco Cafetero Int'l*,
    107 F.R.D. 361 (S.D.N.Y. 1985) ...................................................................................... 9

*United States v. Laeger*,
    No. CIV A. 95-2119, 1996 WL 271615 (W.D. La. Mar. 8, 1996) ............................................. 6

*United  States v. Little Al*,
    712 F.2d 133 (5th Cir. 1983) ...................................................................................... 6, 7

## RULES

Fed. R. Civ. P. 26(c)(1)(D) ............................................................................................... 12, 13

Fed. R. Civ. P. 26(c)(1)(F) ................................................................................................ 12, 13

Fed. R. Civ. P. 30(a)(2)(A)(i) ...................................................................................................... 3

Lead Plaintiffs Middlesex County Retirement System and the Steamship Trade Association-International Longshoremen's Association Pension Fund (collectively "Lead Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Government's motion for a 30 day stay of certain discovery and for leave to seek an additional stay within those 30 days.

## PRELIMINARY STATEMENT

The Government's attempt to halt certain discovery in this civil class action and, as a result, delay recovery to the proposed Class, for what would likely be an extended period while it pursues criminal charges against an as of yet unidentified and un-indicted individual should be denied.  Instead, because any such potential criminal defendant is not a party to this action and therefore can not participate in discovery here, the Government's concerns can be practically addressed by an appropriate protective order precluding dissemination of the relevant deposition transcripts,  any discussion of the witnesses' responses as well as any documents marked by counsel.

Each of the concerns raised by the Government centers around disclosure of the relevant witnesses' testimony to the potential criminal defendants.   These concerns can be dealt with by an appropriate protective order.  This approach protects against premature discovery of the witnesses' statements and the Government's case, while at the same time avoids the prejudicial disruption an undue delay would cause to the orderly and expeditious conduct of this civil action.

## STATEMENT OF FACTS

**The Securities Class Action**

On July 9, 2007, Lead Plaintiffs filed an Amended Class Action Complaint (the "Complaint"), naming as defendants Monster Worldwide Inc. ("Monster" or the "Company"), Monster's founder and former CEO and Chairman, Andrew J. McKelvey ("McKelvey"), and Monster's former General Counsel, Myron Olesnyckyj ("Olesnyckyj") (Docket Entry No. 37).

As detailed in the Complaint, this action involves a decade-long scheme, orchestrated by McKelvey and Olesnyckyj, to inflate the Company's reported net income while attracting and retaining top level officers, directors and employees by generating undisclosed profits for them. The fraudulent scheme was perpetrated by improperly backdating and accounting for numerous stock option grants at the Company from 1997 to April 2003. Throughout the Class Period, Monster falsely accounted for millions of dollars in stock options to its officers, employees and directors by failing to record a compensation expense despite the fact that each option grant had a compensatory component, in contravention of Accounting Principles Board Opinion No. 25 ("APB 25") and Monster's own stated accounting policies. On December 13, 2006, Monster admitted, through its $339.6 million restatement ("Restatement") covering its financial results from 1997 to 2005, that the Company's stock option practices constituted an intentional fraud that began in 1997, just one year after it went public.

At the commencement of the action, on June 6, 2007, the Court entered a Protective Order to guard the confidentiality of information disclosed during discovery. (Docket Entry No. 32). The Protective Order is binding on all parties to the action and prohibits the dissemination of confidential material to anyone in violation of the Protective Order under pain of contempt. All of the documents produced by Monster have been marked confidential and are subject to the Protective Order.

On January 10, 2008 the Court entered a Civil Case Management Order ("CMO") requiring the case to be ready for trial on July 30, 2008. (Docket Entry No. 62). The CMO requires that all discovery, including all depositions, be completed by June 9, 2008.

Significant resources have been expended by the parties to date in conducting discovery. Lead Plaintiffs have obtained and reviewed over 1,200,000 pages of documents from Monster and third parties, including BDO Seidman LLP., the Company's auditors. After reviewing the substantial documents produced in this case, Lead Plaintiffs proceeded to schedule and conduct depositions. The depositions sought by Lead Plaintiffs have been scheduled so as to be completed before the discovery cut-off date of June 9, 2008.

On April 7, 2008, Lead Plaintiffs took the deposition of McKelvey, who invoked the Fifth Amendment privilege against self incrimination to every substantive question posed. At present, Lead Plaintiffs have noticed the depositions of eleven additional witnesses and contemplate noticing the depositions of several more witnesses.[1] The eleven noticed deponents include: Myron Olesnyckyj, James Treacy, Margeretta Noonan, Tony Bonica, Steve Pogorzelski, Michael Piotrowski, Bart Catalane, Eric Stutzke, Robert Jones, Erin Barriere, and Andrew Burchhill.

In addition to the eleven outstanding depositions noticed, Lead Plaintiffs anticipate noticing at least the following additional depositions[2]: (1) Nancy Rooney, the administrative

---

[1] It should be noted that Monster's Rule 26 Initial Disclosures in this matter named 55 individuals as likely to have discoverable information in this case.

[2] Lead Plaintiffs note here these additional depositions for two reasons. First, in the interests of judicial economy, to give the Government notice and the opportunity to include them in the instant motion at oral argument. Second, to request the Court's consent to allow Lead Plaintiffs to exceed the 10 depositions rule in Fed R. Civ. P. 30(a)(2)(A)(i). Given the number of potential witnesses identified by Monster in its Initial Disclosures and the further complicating factor that many of the witnesses will likely be invoking the Fifth Amendment, it is necessary to exceed 10 depositions in this securities class action.

assistant to McKelvey (since McKelvey has invoked the Fifth Amendment in response to every substantive question posed at his deposition, it is necessary to depose Ms. Rooney who may be able to testify to McKelvey's role in option grants at Monster); (2) Madeline Cintron, Monster's HR/Stock Options Administrator; (3) Lee Dewey, the engagement partner at BDO Seidman LLP, the auditing firm engaged by Monster to audit its financial statements during all relevant periods including during the Class Period, and depending upon Mr. Dewey's specific knowledge another BDO audit team member; (4) Michael Kaufman, a Monster Director since October 1997 who was a member of the Compensation Committee at relevant times and who signed numerous Unanimous Written Consents granting options "as of" dates that have been determined to be backdated; (5) Robert O'Connell, the COO of Monster.com, who was promoted to Group President of Finance and Human Resources; (6) analysts that covered Monster during the Class Period; and (7) a Rule 30(b)(6) witness(es) on behalf of Monster.

**The Government's Motion**

Based upon its ongoing criminal investigation into options backdating at Monster and the prospect that certain individuals noticed to be deposed in the civil class action "are likely to be witnesses in future criminal prosecutions" (Gov't Br. p. 10), the Government has moved for an initial 30 day stay of those depositions with the right to apply for a further stay of unspecified length.

While the Government's application does not address the issue, it seems clear that the Government is preparing to indict one or more co-conspirators connected to the fraudulent options backdating. As recounted in the Government's motion, both McKelvey and Olesnyckyj are already subjects of criminal proceedings for their roles in leading Monster's options backdating fraud. Olesnyckyj has pled guilty, is cooperating with the Government and is awaiting sentencing. McKelvey, due to his terminal illness, has entered into a deferred

- 4 -

prosecution agreement with the Government.  Thus, neither of two named individual defendants is the subject of the Government's ongoing investigation, nor is either contemplated to be the subject of any future criminal trial.  The Government has not suggested that Monster itself is a target of the ongoing investigation.

The Government seeks the stay with respect to six depositions noticed by Lead Plaintiffs, namely: (1) Myron Olesnyckyj (scheduled for May 29), a defendant in this action who has previously pled guilty to conspiracy and securities fraud, is a cooperating witness in the Government's ongoing investigation who is awaiting sentencing for his admitted role in the options backdating fraud at Monster, and who will likely invoke his Fifth Amendment right against self-incrimination as to all substantive inquiries at his deposition;[3] (2) Erin Barriere (originally scheduled for May 1, and now awaiting a rescheduled date from Monster's counsel), a manager of Human Resources at Monster who reported to the Director of Human Resources; (3) Andrew Burchhill (awaiting a date from Monster's counsel), Monster's Assistant General Counsel, who reported to Olesnyckyj; (4) Margeretta Noonan (scheduled for April 30),  the Director of Human Resources at Monster; (5) Michael Piotrowski (scheduled for May 8), Monster's Stock Option Administrator; and (6) Steve Pogorzelski (scheduled for  May 6), a senior executive at Monster involved in stock option grants.  The Government describes these six individuals as having intimate knowledge of the options backdating and as critical witnesses in any future potential criminal proceeding.  (See Gov't Br. at pp. 4-5).

Lead Plaintiffs have learned that Mr. Piotrowski will be relocating to China for a year at the end of May 2008.

---

[3] Olesnyckyj has previously invoked the Fifth Amendment in this case both in his Answer to the Complaint (Docket Entry No. 54) and in responding to Lead Plaintiffs' First Set of Interrogatories to Defendant Olesnyckyj.

## ARGUMENT

## **THE GOVERNMENT'S MOTION FOR A STAY SHOULD BE DENIED**

Whether to grant a stay resides in the discretion of the Court. *See SEC v. Dresser Indus., Inc.* 628 F.2d 1368, 1375 (D.C. Cir.), *cert. denied*, 449 U.S. 993 (1980). A court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case. *Id.*

It is well settled that "[i]n the absence of substantial prejudice to the rights of the parties involved ... parallel [criminal and civil] proceedings are unobjectionable." *Id.* at 1374; *see also In re Grand Jury Subpoena*, 920 F.2d 235, 241 n5 (4th Cir. 1990) ("it is generally accepted that related ... criminal and civil proceedings may be pursued simultaneously"); *SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 667 (5th Cir. 1981) ("[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable"); *United States v. Laeger*, No. CIV A. 95-2119, 1996 WL 271615, at *3 (W.D. La. Mar. 8, 1996) ("[n]umerous cases hold that parallel criminal and civil trials are not objectionable in themselves."). In *SEC v. Saad*, 384 F. Supp. 2d 692, 693 (S.D.N.Y. 2005), this Court held that "the Court's starting point is that discovery and other proceedings in a civil action brought by the Securities and Exchange Commission ought to proceed in the normal course, notwithstanding the happenstance that some of the discovery also relates to a parallel criminal matter."

It is equally well established that a stay of litigation is an "extraordinary remedy," highly disfavored by the courts. S*ee Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (stays are disfavored); *Jackson v. Johnson*, 985 F. Supp. 422, 424 (S.D.N.Y. 1997) (same). As the Fifth Circuit has explained, a request for a stay "contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *United*

*States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983).  *See also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[I]f there is even a fair possibility that the stay ... will work damage to someone else," "the supplicant … must make out a clear case of hardship or inequity in being required to go forward.").

Thus, a criminal prosecutor's request for a stay should be granted only in extreme circumstances, in order to avoid "substantial and irreparable prejudice" to a criminal proceeding, *First Fin.*, 659 F.2d at 668.  "[T]he mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceeding, does not establish the requisite good cause for a stay."  *Horn v. District of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002) (quoting *United States v. Geiger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997)).

In evaluating stay requests, courts typically weigh a number of factors, considering each with a heavy presumption against the stay.  *See  SEC  v. Jones*, No. 04 Civ. 4385 (RWS), 2005 WL 2837462, at *1 (S.D.N.Y. Oct. 28, 2005).  Among the factors normally considered are: (i) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (ii) the private interests of and burden on the defendants; (iii) the interests of the courts; (iv) the interests of persons not parties to the civil litigation; and (v) the public interest.

### 1.      **Private Interests of and Prejudice to Lead Plaintiff and the Class**

In connection with this inquiry, it is well established that "[p]laintiffs in federal court have the right to pursue their cases, and to expeditiously vindicate their claims." *Connecticut ex rel. Blumenthal v. BPS Petroleum Distributors, Inc*.,  Civ. No. 3:92-CV-00173(WWE), 1991 WL 177657, at *2 (D. Conn. July 16, 1991); *JHW Greentree Capital, L.P. v. Whittier Trust Co*.,  No.

05 Civ. 2985(HB), 2005 WL 1705244, at *2 (S.D.N.Y. July 22, 2005) (court held that plaintiff's interests in a speedy resolution to the action and in conducting "real discovery" would be frustrated by the stay, which "indubitably" weighed against a stay issuing).  In connection with this right, plaintiffs should be able to pursue discovery before "[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end."  *BPS Petroleum Distributors,* 1991 WL 177657, at *2 (quoting *In re Mid-Atlantic Toyota Antitrust Litig.*, 92 F.R.D. 358, 359 (D. Md. 1981)); *see also In re Scrap Metal Antitrust Litig.*,  No. 1:02-CV-0844, 2002 WL 31988168, at *5 (N.D. Ohio Nov. 7, 2002) (interests of plaintiffs in avoiding stay included "legitimate concerns" about witnesses' memories fading with the passage of time and witnesses becoming unavailable). In these ways, stays in actions that work to delay the process of adjudication prejudice the rights of plaintiffs.  *See id.*

In this civil litigation, the Government seeks to stay the depositions of six indispensable witnesses with vital information to Lead Plaintiffs' case.  The Government makes this request now, approximately one month before discovery is to be completed pursuant to the CMO.  To delay discovery at this stage would prejudice the rights of Lead Plaintiffs and the Class to resolve this matter expeditiously and to take readily available and vital discovery that may be unavailable, or of lesser value, later.

For example, at least one of the deponents at issue, Michael Piotrowski, will be moving to China at the end of May.  *See* Gardner Decl., at ¶ 11.  This is precisely the type of prejudice that the Court should guard against.  *See BPS Petroleum Distributors,* 1991 WL 177657, at *2; *see also Scrap Metal*,  2002 WL 31988168, at *5.

Furthermore, the Government argues that the delay will be insignificant as it is merely seeking a "modest" 30-day stay of these depositions pending its investigation into whether to

- 8 -

bring future criminal prosecutions.  (*See* Gov't Br., at 11).  However, it is likely that this will not be the last request made by the Government, as demonstrated by its own application "for leave to seek an additional stay within that 30 day period, at which time the Government can advise the Court and the parties of the status of its investigation, as appropriate, and attempt to provide the Court with more guidance as to the timing of any additional criminal prosecutions." (Gov't Br., at 11).  Indeed, the Government has indicated that the specific intended deponents at issue "are likely to be witnesses in future criminal prosecutions." (Gov't Br., at 10).  Given the wording of its own application, a stay of only 30 days is unrealistic.  The resulting delay to the civil action could last for many months pending an indictment and ultimate criminal trial.  Such a lengthy delay would result in great prejudice to the Lead Plaintiffs and the Class.  *See SEC v. Treadway*, No. 04 Civ. 3464(VM)(JCF), 2005 WL 713826, at *4 (S.D.N.Y. Mar. 30, 2005) (denying stay of civil depositions related to one criminal action based in part on the fact that the deponent would not testify in the criminal court until four months after discovery in the civil action was to take place); *Scrap Metal*, 2002 WL 31988168, at *6 (denying stay motions and indicated that while defendant and government had "asked for limited stays" they both sought in effect an indefinite stay given that depending on the circumstances at the end of the proposed stay, they may move for an additional stay); *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985) (denying motion for stay based in part on the fact that the "the scope and duration of the requested stay [was] too indefinite" as there was no information as to the status of the investigation or how long before it would be resolved).

Accordingly, the interests of Lead Plaintiffs and the Class in an expeditious resolution of their claims weigh strongly against the issuance of a stay.

**2.      Interests of Court and Public**

The court and the public also share an interest in the expeditious resolution of actions. *See JHW Greentree Capital*, 2005 WL 1705244, at *2 (in denying a motion for stay the court noted the public and the court's interest in avoiding an indefinite delay of a civil proceeding – and the "administration of justice"); *see also Treadway*, 2005 WL 713826, at *4 (holding that the interests of the court in the expeditious resolution of the matter would be impaired if a stay was granted as to witnesses to be deposed in the civil action, as they would not testify in the criminal trial until four months after discovery in the civil action was to take place). The court in *JHW Greentree Capital* also discussed its interest in "managing its cases and docket efficiently and resolving [] litigation[s]" in finding that its interest weighed against a stay. *See* 2005 WL 1705244, at *2; *see also Scrap Metal*, 2002 WL 31988168, at *7 ("The Court has an obligation to move its docket, and not to let cases languish before it").

Similarly, in this civil action, the parties have already filed their pleadings, resolved motions to dismiss and have commenced discovery – including production and review of over a million pages of documents – discovery which is set to be completed by June 9, 2008. Accordingly, Lead Plaintiffs submit that, given the posture of this case, the public and Court's interest would not be well served by an indefinite stay.

The Government argues judicial economy favors a stay since, in its view, "issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action (Gov't Br. p. 9). However, the Government once again ignores the fact that none of the

- 10 -

civil defendants will be defendants in any future criminal trial.[4]  Thus, whatever the outcome of any future criminal trial, there can be no preclusive effect in this civil action.

**3.**      **Interests of Persons Not Party to the Civil Litigation**

The Government has characterized its interest as ensuring that "civil litigants not be allowed to use civil discovery to avoid the restrictions that would otherwise pertain in criminal discovery to a criminal defendant" and that discovery of the witnesses' statements by criminal defendants is improper.  *See* Gov't Br., at 8.  Given the facts here and the availability of an appropriate and balanced protective order, the Government's concerns are misplaced.

Specifically, the concern that criminal defendants (or potential criminal defendants) will be able to obtain discovery in a civil action that they can then use to their benefit in a criminal case, thus avoiding the limitations of criminal discovery, is most often found in cases where the (potential) criminal defendant is also a party to the civil litigation.  In this way, the argument goes, that criminal defendant could gain access to information as a party to the civil action that they would not have been entitled to in the criminal action. In fact, that is precisely the fact pattern that emerges in one of the cases cited by the Government in support of its application for a stay. *See, e.g.*,  *SEC v. Beacon Hill Asset Management LLC*., No. 02 Civ. 8855(LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (civil defendant, Beacon Hill, was also target of government's criminal investigation and a stay was granted so Beacon Hill could not "use the pendency of this action to gain an advantage that is not ordinarily afforded to subjects of criminal investigations"; the Court noted that Beacon Hill was aggressively using civil discovery to find out what information the United States Attorney's Office was gathering).

---

[4] Indeed each of the cases cited by the Government on this point involves parallel criminal and civil actions against the same defendant or defendants.

- 11 -

Here, the individual defendants in this civil action, McKelvey and Olesnyckyj, have already reached a plea agreement and deferred prosecution agreement, respectively, with the Government. Nor is it likely that Monster is facing criminal charges. Accordingly, any potential criminal defendant is not a party to this civil litigation and, therefore, has no right to attend any of the depositions or gain access to the information obtained from any deponent.

Because a stay is an extraordinary measure it should not be utilized absent lesser measures being insufficient to protect the interests of the moving party. *See generally Sterling*, 175 F. Supp. 2d at 576. In this case, the Court can take measures other than imposing a stay of critical discovery that would address the Government's concerns while, at the same time, allowing all discovery to proceed. These measures include: (1) ordering that the depositions of the relevant witnesses be treated as confidential under the terms of the Protective Order already in place in this action;  (2) pursuant to Fed. R. Civ. P. 26(c)(1)(F), ordering that the subject depositions (including exhibits marked) be sealed and opened only on Court order; and (3) pursuant to Fed. R. Civ. P. 26(c)(1)(D), forbidding discovery at the subject depositions of any communications by the witnesses with the Government or of any agreements between the witnesses and the Government or the terms thereof.[5]

By imposing an appropriate protective order, all of the concerns expressed by the Government where parallel civil and criminal actions exist – including the risk that disclosure will lead to perjury and manufactured evidence, the fear that Government witnesses will be

---

[5] As indicated in the Gardner Decl., Lead Plaintiffs agree not to inquire as to any communication between the witnesses and the Government.

intimidated,[6] and the fear that the criminal defendants will unfairly surprise the Government at trial with information gained through civil discovery (*See* Gov't Br. p. 9) - can be alleviated.

Courts often apply practical solutions in situations such as this in order to balance the Government's concerns while striving not to disrupt a civil litigant's right to an orderly and expeditious resolution of their claims. For example, in *Saad*, 384 F. Supp. 2d at 693-94, this Court stayed the depositions of the two defendants who were contesting both the civil and the criminal actions as well as four cooperating Government witnesses since all six "would invoke the Fifth Amendment privilege against self-incrimination and refuse to testify substantively in the instant case, thus rendering the taking of their depositions prior to the conclusion of the criminal case of little substantive value." The Court otherwise denied the Government's broad application to stay discovery and permitted all other discovery to proceed.

Accordingly, given the facts present here (that the potential criminal defendants are not parties to the civil action), the Government's interests are not adversely implicated by allowing discovery to continue. However, even if this Court finds that they are implicated, these interests can be protected adequately by the existing Protective Order and with other measures that the Court may adopt, including issuing orders pursuant to Fed. R. Civ. P. 26(c)(1)(D) and (F).

**4.     Interests of Defendants**

While consenting to the Government's application, the defendants in this matter do not really have an interest at stake other than their natural desire to delay any case against them from proceeding. Olesnyckyj has previously pled guilty in connection with the criminal matter and is

---

[6] It bears noting that the Government itself has publicly filed its motion papers which identify by name the six individuals it states will be witnesses in any future criminal trial.

now cooperating with the Government.  McKelvey has made his own deal with the Government, accepting responsibility for his participation in the backdating scheme through a deferred prosecution agreement.

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court deny the Government's application for a stay of certain discovery.

Dated:  April 24, 2008
New York, NY

Respectfully submitted,

LABATON SUCHAROW LLP

By:     /s/ Jonathan Gardner
Joel H. Bernstein (JB-0763)
Mark S. Arisohn (MA-2364)
Jonathan Gardner (JG-8512)
Nicole M. Zeiss (NZ-3894)
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Lead Counsel for Lead Plaintiffs*

GOLDMAN SCARLATO &
KARON, P.C.
Brian D. Penny
101 W. Elm Street, Suite 360
Conshohocken, PA  19428
Tel.:  (484) 342-0700
Fax:  (484) 342-070

*Counsel for Lead Plaintiffs*