# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MONSTER WORLDWIDE, INC., SECURITIES LITIGATION | 07-cv-02237 (JSR) |

### MEMORANDUM OF LAW IN SUPPORT OF THE CLASS REPRESENTATIVE'S UNOPPOSED MOTION FOR <u>PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT</u>

**LABATON SUCHAROW LLP**

140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Class Counsel for Middlesex County Retirement System as Class Representative and the Class*

**GOLDMAN SCARLATO & KARON, P.C.**

101 W. Elm Street, Suite 360
Conshohocken, PA 19428
Telephone: (484) 342-0700
Facsimile: (484) 342-0701

*Counsel for Middlesex County Retirement System as Class Representative and the Class*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BRIEF PROCEDURAL HISTORY .......................................................................................... 3

    A.    The Allegations ............................................................................................ 3

    B.    Motion Practice ............................................................................................ 4

    C.    Discovery at the Time of Settlement ......................................................... 5

    D.    Settlement Negotiations and Overview of the Settlement ...................... 6

    E.    Summary of the Proposed Settlement ........................................................ 6

ARGUMENT ............................................................................................................................ 8

I.    THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR
    PRELIMINARY APPROVAL .................................................................................. 8

    A.    Factors to Be Considered ........................................................................... 8

    1.    The Proposed Settlement Is the Result of Well Grounded, Good
        Faith, Arm's-Length Negotiations ............................................................ 10

    2.    The Proposed Settlement Falls Well Within the Range of
        Reasonableness and Warrants Notice and a Hearing on Final
        Approval ..................................................................................................... 11

    3.    The Settlement Has No Obvious Deficiencies ......................................... 14

II.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES
    AND PLAN FOR PROVIDING NOTICE TO THE CLASS ......................................... 15

CONCLUSION ........................................................................................................................ 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abrams v. Van Kampen Funds, Inc.,*
   No. 01 C 7538, 2006 WL 163023 (N.D. Ill. Jan. 18, 2006).....................................................12

*Barone v. Safway Steel Products, Inc.,*
   No. 03-4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005 ....................................................17

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988)..............................................................................................................13

*Bourlas v. Davis Law Assocs.,*
   237 F.R.D. 345 (E.D.N.Y. 2006) .....................................................................................8, 9 10

*Cagan v. Anchor Sav. Bank,*
   No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ...............................................12

*In re Charter Commc'ns, Inc. Sec. Litig., No. MDL 1506,*
   2005 WL 4045741 (E.D. Mo. June 30, 2005)........................................................................12

*In re Crazy Eddie Sec Litig.,*
   824 F. Supp. 320 (E.D.N.Y. 1993) .......................................................................................12

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)....................................................................................................9

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005)..............................................................................................................14

*Goldberger v. Integrated Resources, Inc.,*
   209 F.3d 43 (2d Cir. 2000)......................................................................................................7

*Hicks v. Morgan Stanley,*
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................12

*In re Initial Public Offering Sec. Litig.,*
   226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................................................8, 9

*In re Initial Public Offering Sec. Litig.,*
   243 F.R.D. 79 (S.D.N.Y. 2007) ..............................................................................................9

*Joel A. v. Giuliani,*
   218 F.3d 132 (2d Cir. 2000)....................................................................................................8

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................8

*Lentell v. Merrill Lynch & Co.*,
     396 F.3d 161 (2d Cir.), *cert. denied*, 126 S. Ct. 421 (2005) .................................................13

*In re Luxottica Group S.P.A. Sec. Litig.*,
     233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................................................13

*In re Med. X-Ray Film Antitrust Litig., No. CV 93-5904*,
     1997 WL. 33320580 (E.D.N.Y. Dec. 26, 1997) .....................................................................10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
     249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
     176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................................9, 10

*Peters v. Nat'l R.R. Passenger Corp.*,
     966 F.2d 1483 (D.C. Cir. 1992) .............................................................................................17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
     163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................................................8, 10

*Reade-Alvarez v. Eltman & Cooper, P.C.*,
     237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................................9, 10, 14

*In re Sumitomo Copper Litig.*,
     189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................................13

*Taft v. Ackermans*,
     No. 02-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................................8

*Thompson v. Metropolitan Life Ins. Co.*,
     216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005).................................................................................................8, 10

## STATUTES

15 U.S.C. § 78u-4(a)(7) .......................................................................................................16

Fed. R. Civ. P. 23(c)(2)......................................................................................................... 7

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 16

Private Securities Litigation Reform Act of 1995 (the "PSLRA"),
     15 U.S.C. §§ 78u-4 *et seq* ..................................................................................................1

## OTHER AUTHORITIES

Stephanie Plancich, Brian Saxton & Svetlana Starykh,
   *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as
   Subprime Cases Take Off; Average Settlements Hit New High* (NERA Dec. 2007)................11

Laura E. Simmons & Ellen M. Ryan,
   *Securities Class Action Settlements* (Cornerstone Research 2008)..........................................12

## PRELIMINARY STATEMENT

Class Representative Middlesex County Retirement System ("Class Representative" or "Middlesex") submits this memorandum of law in support of its unopposed motion, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, for:

(i)  Preliminary approval of the proposed settlement ("Settlement") of this certified class action ("Action"), as set forth in the Stipulation and Agreement of Settlement dated September 24, 2008 (the "Stipulation"), filed contemporaneously herewith; and

(ii)  Approval of the form, substance and the requirements of the proposed Notice of Pendency of Class Action and Proposed Settlement  (the "Notice") and Summary Notice of Pendency of Class Action and Hearing on Proposed Settlement ("Publication Notice"), appended as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order, and the means and methods for disseminating the notices, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.

The Class Representative submits that the proposed settlement of the Action for $47.5 million is an excellent result for the Class that should be preliminarily approved.  In consideration for this payment, the Settlement would result in the dismissal of the Amended Class Action Complaint for Violation of the Federal Securities Laws, filed on July 9, 2007 (the "Amended Complaint") with prejudice and the release of all related claims against the defendants in the Action.

The Amended Complaint generally alleges that Monster Worldwide, Inc. ("Monster"), its founder and former CEO, Andrew J. McKelvey ("McKelvey"), and its former General Counsel, Myron Olesnyckyj ("Olesnyckyj") (collectively "Defendants" and McKelvey and Olesnyckyj are collectively the "Individual Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by issuing false and misleading periodic reports, which were filed with the Securities and Exchange Commission ("SEC") during the period from May 6, 2005 through June 9, 2006, inclusive (the

"Class Period"), containing misstatements about the stock option grants issued by Monster in a scheme to artificially inflate the value of Monster securities. The Individual Defendants, as control persons, are allegedly liable under Section 20(a) of the Exchange Act and Mr. McKelvey is alleged to have violated Section 20A of the Exchange Act when he sold shares of Monster during the class period.

The Settlement, which was only reached after extensive investigation, fact discovery involving the review of more than one million pages of documents and depositions, expert discovery, aggressive motion practice and several months of discussions (including two mediation sessions before an impartial mediator), provides a substantial recovery of 27.5% of the aggregate damages estimated by the Class's damages expert. Accordingly, the Class Representative respectfully requests that this Court enter the proposed Preliminary Approval Order, approving the Settlement at this stage and providing for the dissemination of notice to the Settlement Class.[1]

---

[1] The Preliminary Approval Order also seeks, *inter alia*:

(i) scheduling of a hearing (the "Settlement Hearing") to consider the fairness, reasonableness and adequacy of the proposed Settlement and Plan of Allocation of the Net Settlement Fund ("Plan of Allocation" or "Plan"), Class Counsel's application for an award of attorneys' fees and expenses, and Middlesex's application for reimbursement of costs directly related to their representation of the Class;

(ii) approval of the appointment of Berdon Claims Administration LLC to administer the Settlement;

(iii) approval of procedures by which persons may request to be excluded from the Class; and

(iv) approval of procedures for Class Members to object to the terms of the Settlement, Plan of Allocation, or applications for fees and expenses.

If the Court grants preliminary approval, the Class Representative respectfully proposes the following schedule for the various Settlement events:

- Mailing of individual Notices and Proof of Claim forms to all Class Members who can be identified through reasonable effort (the "Notice Date"): ***4 days after entry of the Preliminary Approval Order.***

(*continued …*)

## BRIEF PROCEDURAL HISTORY

### A.    The Allegations

The claims arise out of a June 12, 2006 *Wall Street Journal* article reporting that Monster was likely to have backdated the stock options it issued to employees and executives, who were "frequently granted options . . .ahead of sharp run-ups in its share price, raising questions about whether the grants were backdated or otherwise timed to boost their value to the recipients."  There were further disclosures later that day, including that a special committee had already begun an investigation into Monster's option granting practices and that a grand jury subpoena from the United States Attorney's Office for the Southern District of New York had been issued.  On June 13, an analyst report lowered the rating and price target for Monster stock and Monster announced that the SEC had commenced an informal investigation of Monster's stock option grants and requested the Company to preserve documents.  Monster's stock price dropped over 15% in the two days.

On December 13, 2006, Monster filed an amended and restated annual report reporting that the Company's internal investigation into Monster's stock option practices revealed intentional backdating by un-named persons (the "Restatement").  As a result, the

---

(*… continued*)

- Publication of the summary notice once in the national edition of *Investor's Business Daily*: ***10 days after the Notice Date.***
- Deadline for submission of requests for exclusion from the Class or objections to the Settlement, Plan of Allocation, or motions for fees and expenses: ***14 days before the Settlement Hearing.***
- Deadline for filing motions in support of the Settlement and request for attorneys' fees and incurred expenses:  ***7 days before the Settlement Hearing.***
- Settlement Hearing: ***At the Court's convenience, but preferably within 45 days after the Notice date.***
- Deadline for submission of Proofs of Claim: ***postmarked 90 days after the Notice Date***.

Company reported additional compensation expenses of $339.6 million (pre-tax) from 1997 to

2005. On March 27, 2007, Mr. Olesnyckyj pled guilty to one count of conspiracy to commit

securities fraud and one count of securities fraud. On January 22, 2008, Mr. McKelvey was

charged with conspiracy to commit securities fraud and securities fraud. On that same day,

McKelvey entered into a deferred prosecution agreement with the Government in consideration

of health concerns. Civil actions brought by the SEC against Olesnyckyj and McKelvey have

been settled. Both will be permanently barred from serving as officers or directors of a public

company in the future and enjoined from violating several sections of the Exchange Act and the

Securities Act of 1933. Mr. McKelvey has also paid $275,989.72 in disgorgement and

prejudgment interest.

   The gravamen of the Amended Complaint is the allegation that during the Class

Period, Defendants artificially inflated the price of Monster's stock by intentionally backdating

stock option grants to Company officers, directors, and employees and intentionally, or with

severe recklessness, failing to disclose these practices to investors and to properly account for the

backdated stock option grants during the Class Period.

**B.**  **<u>Motion Practice</u>**

   The Parties have been vigorously litigating the Action since the initial complaint

was filed in March 2007. Defendant McKelvey made two motions to dismiss the claims against

him. His first motion was filed in April 2007, then withdrawn in June 2007 pending the filing of

the Amended Complaint in July 2007. His second motion was denied in November 2007. In

February 2008, the Class Representative moved against each of the Defendants for partial

summary judgment on its claims in order to establish certain elements of liability. Middlesex

also moved to certify the Action as a class action. On April 25, 2008, the Court granted three

elements of the Class Representative's motion for partial summary judgment, only one of which

related to the Section 10(b) claim, and denied the others finding disputed issues of fact that should be decided by a trier-of-fact and not by the court as a matter of law.

After extensive motion practice, by Order entered July 15, 2008, the Court certified the Action as a class action on behalf of all persons or entities who purchased the securities of Monster Worldwide, Inc. during the Class Period and who were damaged thereby (excluding the Defendants and certain other persons), appointed Middlesex as the Class Representative and appointed Labaton Sucharow LLP as Class Counsel.

## C.    Discovery at the Time of Settlement

Prior to formal discovery beginning, counsel conducted an extensive investigation to locate and interview numerous former Monster employees.  Even before Mr. McKelvey's motion to dismiss was decided, Monster electronically produced core non-privileged documents that it had produced to the SEC.  Thereafter, the Class Representative served document requests on each of the Defendants and served more than thirty subpoenas to non-parties, such as financial analysts and former Monster employees, requesting additional documents.  Overall, approximately 1.3 million pages of documents were produced to the Class and reviewed by counsel at the point of Settlement.  Depositions of Monster employees, Monster former employees (including that of Defendant McKelvey) and Middlesex's investment advisor were taken by the time the Settlement was reached.  The parties also propounded interrogatories and requests for admission.

In addition, Defendants served the Class with two expert reports on the issue of damages, one report on the immateriality of non-cash expenses, such as compensation expenses stemming from options, and one report on the materiality of Monster's Restatement.  The Class served Defendants with an expert affidavit on the efficiency of the market for Monster's

securities, an expert report on damages and an expert report on accounting for stock options and the materiality of the Restatement.

**D.**     **Settlement Negotiations and Overview of the Settlement**

The Settlement is the result of both informal conferences and two formal day-long mediation sessions with an impartial mediator, Mr. Jonathan Marks.  These conferences took place over a period of several months.  The final terms of the Settlement were also negotiated over the span of a month.  The negotiations were at arms-length and well informed by: (i) months of extensive informal investigation by counsel, including interviews with numerous former Monster employees; (ii) analyses of the publicly available information about Monster and the Individual Defendants; (iii) an analysis of the Company's financial wherewithal to sustain a judgment or pay a settlement; (iv) contentious motion practice seeking dismissal of the claims, partial summary judgment on the claims and class certification; (v) formal fact discovery; and (vi) formal expert discovery.

**E.**     **Summary of the Proposed Settlement**

The Settlement will be funded by a $46,950,000.00 payment by Monster and a $550,000 personal contribution by Defendant McKelvey.  (Mr. McKelvey's contribution to the Settlement was important to the Class Representative.)  The only agreements between the Class Representative and the Defendants about the Settlement are the Stipulation, filed herewith, and a supplemental agreement concerning the circumstance under which the level of exclusions from the Settlement could cause Defendants to terminate the Settlement. (*See* Stipulation ¶31.)  Other than the "Threshold Amount" of exclusions that could trigger termination, all of the terms of the supplemental agreement are also set forth in the Stipulation.  As is commonly done, the supplemental agreement is not being filed in order to keep the Threshold Amount confidential and to avoid an intentional trigger by a large shareholder.

The $47.5 million in cash, less attorney's fees[2] and any expenses awarded by the Court, notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants (*i.e.*, Class Members who file timely and valid Proofs of Claim) in accordance with the Plan of Allocation described fully in the Notice.[3]   The Plan of Allocation, which was drafted with the assistance of the Class's damages expert, takes into account the various alleged disclosure dates and stock drops and treats all potential claimants in a fair and equitable fashion.  Each Authorized Claimant will be paid that percentage of the Net Settlement Fund that such Authorized Claimant's "Recognized Loss" represents in relation to the total claims of all Authorized Claimants who purchased Monster's common stock or options.

As set forth below, the Settlement meets the standards for preliminary approval as it falls well within the range of possible approvals, was the product of rigorous arms-length negotiations between experienced counsel and has no obvious deficiencies.  The proposed notices should also be issued to the Class given that the notice program is the best practicable under the circumstances.  Fed. R. Civ. P. 23(c)(2).

---

[2] As disclosed in the Notice, at the Settlement Hearing Class Counsel will make a motion that requests an attorney fee in the amount of 25% of the Settlement Fund in light of: (i) the time and labor spent by counsel; (ii) the magnitude and complexities of the Action; (iii) the risk that the Class would not prevail in the Action; (iv) the quality of counsel's representation; (v) the fee in relation to the settlement; and (vi) public policy considerations.  *See, e.g., Goldberger v. Integrated Resources, Inc*., 209 F.3d 43, 50 (2d Cir. 2000).

[3] The Class of investors who will receive distributions from the Net Settlement Fund is the same class certified by the Court.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

### A.    Factors to Be Considered

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the sound discretion of the district court.  *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000).  In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also Taft v. Ackermans*, No. 02-7951, 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007) (same); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.  Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits.") (citations omitted).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'  First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms."  *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005);  *see also Bourlas v. Davis Law Assocs.*, No. 05-4548, 2006 WL 2513021, at *7 (E.D.N.Y. Aug. 30, 2006).  During this first-step, a court must consider whether the settlement

warrants preliminary approval, providing notice to the proposed class and the scheduling of a

final settlement hearing.  In the second-step, after notice of the proposed settlement has been

provided to the class and a hearing has been held to consider the fairness and adequacy of the

proposed settlement, the court considers whether the settlement warrants "final approval."  *Id.*.[4]

> As explained by Judge Robert Sweet:
>
> In considering preliminary approval, courts make a preliminary
> evaluation of the fairness of the settlement, prior to notice.  Where
> the proposed settlement appears to be the product of serious,
> informed, non-collusive negotiations, has no obvious deficiencies,
> does not improperly grant preferential treatment to class
> representatives or segments of the class and falls within the range
> of possible approval, preliminary approval is granted.  Once
> preliminary approval is bestowed, the second step of the process
> ensues. . . .

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)(citations

omitted); *see also, In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Accordingly, at this stage the Court should determine whether the proposed Settlement is

the product of an informed, arm's-length negotiation and free of obvious deficiencies and, thus,

---

[4] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation being settled; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the litigation as a class action through trial; (7) ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

While some courts within the Second Circuit keep these factors in mind when weighing preliminary approval, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is within the range of possible approval." *Reade-Alvarez v. Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *Bourlas*, 2006 WL 2513021, at *7-8 (finding *Grinnell* factors premature); *cf. In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191-99 (S.D.N.Y. 2005)(granting preliminary approval without substantive discussion of *Grinnell* factors).

whether it is within the *range* of what might later be found fair, reasonable and adequate. *Bourlas*, 2006 WL 2513021, at *7; *Reade-Alvarez,* 237 F.R.D. at 34 (same). In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted). In other words, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements." *In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997).

The circumstances underlying the proposed Settlement fully support preliminary approval.

### 1.    The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116, 116 (2d Cir. 2005); *see also In re Merrill Lynch Tyco Research Sec. Litig*., 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (same); *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same).

As the discussion above indicates, the proposed Settlement is the product of extensive arm's length negotiations that occurred between counsel for the parties over the span of several months. The Settlement was reached after the exchange of comprehensive mediation

statements, including damages estimates, and after two full days of mediation before Jonathan

Marks, an experienced independent mediator. The mediation took place at a point when the

Class Representative and Class Counsel had a solid understanding of the strengths and

weaknesses of the Class's claims, built on substantial discovery and complex motion practice.

There is *no evidence* indicating that the Settlement is not the product of serious,

informed and non-collusive negotiations among experienced counsel. Accordingly, it is

deserving of preliminary approval.

> **2.    The Proposed Settlement Falls Well Within the
> Range of Reasonableness and Warrants Notice
> and a Hearing on Final Approval**

The proposed Settlement of $47.5 million would represent a recovery of 27.5% of

potential damages allegedly suffered by common stock and option purchasers during the Class

Period and thus is well within the range of what is considered fair, reasonable and adequate.[5]

By way of comparison, a recent study by NERA Economic Consulting, a firm that

frequently provides damages expertise to defendants in securities fraud cases, reported that

between 2002 and 2007 the median settlement amount in securities fraud class actions was $6.8

million and the median in 2007 was $9.6 million. Also in 2007, the median ratio of settlements

to investor losses in shareholder class actions was 2.4%. *See* Stephanie Plancich, Brian Saxton

& Svetlana Starykh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels*

*as Subprime Cases Take Off; Average Settlements Hit New High* (NERA Dec. 2007) (annexed as

---

[5] An aggregate damages analysis done by the Class's damages expert estimates that
Defendants' alleged violations of the Exchange Act resulted in class-wide damages to
shareholders and option purchasers of approximately $172,600,000. Defendants' experts have
fervently challenged that **any** damages were suffered by the Class given, among other things, the
improvement of Monster's stock price after the alleged disclosures, which they assert was a
market correction.

Ex. 1, pages 13-14, to the accompanying Declaration of Nicole M. Zeiss ("Zeiss Decl."), dated

September 19, 2008).

Similarly, a study by Cornerstone Research found that the median settlement

amount within the Second Circuit through 2006 was $7.0 million and $13.7 million in 2007. *See*

Laura E. Simmons & Ellen M. Ryan, *Securities Class Action Settlements* (Cornerstone Research

2008) (annexed as Ex. 2, page 15, to Zeiss Decl.)  In general, where the lead plaintiff was a

public pension fund, the median settlement amount in 2007 increased from $6.0 million to $18

million.  (*Id*. at 10.)  The study also found that in 2007, where damages were estimated at

between $126 million to $500 million, the median settlement recovery was 3.5% of damages.[6]

(The Cornerstone report also indicates that through 2007, cases litigated by Labaton secured the

highest median percentages of recovery among other major firms.  *Id*. at 14.)

The Class Representative submits that a settlement of almost 30% of estimated

damages, or $47.5 million, is clearly within the range of possible approval.  This very significant

recovery may well be greater than what could have been obtained at trial, assuming the Class

was able to prove liability, if the jury had credited Defendants' damages experts over those of the

Class.  In considering whether to enter into the Settlement, the Class Representative, represented

by counsel very experienced in securities litigation, weighed the value of an immediate recovery

---

[6] *See also Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, at *2 (N.D. Ill. Jan. 18, 2006) (approving settlement of $31.5 million, representing 11.6% of damages); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) ("a settlement of $10 million (24.4% of Defendants' estimate and 3.8% of Plaintiffs' estimate) is within the range of reasonableness for post-PSLRA securities class action settlements."); *In re Charter Commc'ns, Inc. Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting "the average 5.5%-6.2% of estimated losses recovered in securities fraud class action settlements since 1995."); *In re Crazy Eddie Sec Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement providing 6% recovery); *Cagan v. Anchor Sav. Bank*, No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million recovery where damages could have been as high as $121 million).

against the prospect that significant proceedings remained ahead, including additional deposition

discovery, summary judgment briefing, *Daubert* motions, trial preparation and, of course, a trial.

The Class Representative also considered: (1) the risks inherent in litigating a

securities class action through trial; and (2) the particular risks at issue in this Action, which

were closely analyzed while conducting fact and expert discovery and briefing Mr. McKelvey's

two motions to dismiss, the motion for partial summary judgment and the motion for class

certification. Securities class actions are by their nature legally and factually complex and

difficult. *See In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306, 311-12 (E.D.N.Y. 2006)

(noting the litigation being settled "involved numerous difficult legal and financial issues typical

in securities class actions"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)

("In evaluating the settlement of a securities class action, federal courts, including this Court,

have long recognized that such litigation is notably difficult and notoriously uncertain."). In this

instance, there were real risks that the Class Plaintiffs would be unable to establish the required

elements of their Section 10(b) claims, including that the alleged misstatements were materially

false and misleading, that the Defendants acted with scienter (and, particularly, that they knew or

recklessly disregarded that Monster's compensation expenses were being understated), loss

causation and damages.[7]

---

[7] For instance, the Class faced a risk that the jury would find that the alleged misstatements were not material, given Defendants' argument that compensation expenses are not important to investors. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)(a statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.") Defendants would also have argued that the Class could not establish the required element of loss causation, and thus damages, at trial, because the alleged stock drops were purportedly not caused by the news of backdating or increased compensation costs, but by the consequences of the backdating, such as governmental investigations and increased costs relating to the investigations. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir.) (proof that
(*continued …*)

In addition to specific litigation risks, the Class Representative considered the risk that Defendants would be unable to pay a larger recovery after trial and entry of a judgment. If the Class prevailed at trial and proved fraud, Defendants' insurers likely would have sought to disclaim coverage—thus leaving the Company with no insurance proceeds with which to satisfy a judgment.

In sum, the Class Representative had a well-founded understanding of the Class's claims and litigation risks and the Settlement is within the range of reasonableness.

### 3.    The Settlement Has No Obvious Deficiencies

There are also "no grounds to doubt [the Settlement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys). . . ." *Reade-Alvarez*, 237 F.R.D. at 33. As discussed above, the $47.5 million recovery constitutes a significant and certain benefit for Class Members, and may well be as good a recovery as could have been obtained even after trial. The Class Representative will receive its *pro rata* distribution from the Net Settlement Fund in accordance with the Plan of Allocation, as will all other Class Members.

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself raises doubt as to its fairness. Rather, the substantial recovery to the Class, the arm's-length nature of the negotiations, the involvement of an independent and highly experienced mediator and the participation of sophisticated counsel and an institutional class representative throughout the litigation, compels the finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the Class and

---

(*… continued*)
material misstatements caused plaintiffs' losses is a required element of a Rule 10b-5 claim) (citing 15 U.S.C. § 78u-4(b)(4)), *cert. denied*, 126 S. Ct. 421 (2005); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

the scheduling of a final approval hearing.  Thus, the Class Representative respectfully urges the Court to preliminarily approve the Settlement.

## II.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS

The Court should also approve the form and content of the proposed Notice and Publication Notice.  *See* Exhibits A-1 and A-3 annexed both to the proposed Preliminary Approval Order and Stipulation.  Each is written in clear, straightforward language, and the Notice uses a format that clearly sets out the relevant information.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises Class Members of the nature of the action, the definition of the Class that has been certified, the Class claims and issues, the claims that will be released, that a Class Member may enter an appearance through counsel if desired, that the Court will exclude from the Class any Class Member who timely and validly requests exclusion (and sets forth the procedures and deadline for doing so), the binding effect of a judgment on Class Members under Rule 23(c)(3) and how to object to the proposed Settlement.

The Notice also satisfies the separate disclosure requirements imposed by the Private Securities Litigation Reform Act ("PSLRA").  The Notice, *inter alia*: states the amount of the Settlement, determined in the aggregate and on an average per share basis; provides a statement from the parties concerning the issues about which they disagree; provides a brief statement explaining the reasons why the parties are proposing the Settlement; states the amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that Class Counsel will seek, with a brief explanation supporting such fees and expenses; provides the names, addresses, and telephone numbers for the Claims Administrator and Class Counsel, who will be available to answer questions from Class members; and includes

a cover page summarizing all of this information.  *See* 15 U.S.C. § 78u-4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003) (discussing PSLRA notice requirements and approving notice where "cover page" was actually two pages).

Additionally, both of the Notices disclose the date, time and location of the Settlement Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement, Plan of Allocation, or attorney's fees and expenses to be sought by counsel.  These disclosures are thorough and should be approved by the Court.

Berdon Claims Administration LLC is the proposed claims administrator.  Berdon has been a claims administer for almost 20 years.  During that time, they have administered thousands of settlements and distributed $1.5 billion in claims.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1).  The proposed notice plan readily meets these standards.  The Class Representative, through an experienced settlement and claims administrator, will cause the Notice, including the Plan of Allocation and Proof of Claim form to be sent by first class mail to every Class Member who can be identified through reasonable effort.  This will be accomplished principally by using record holder data produced by the transfer agent for Monster, and by reaching out to broker-dealers for the last-known names and addresses of potential Class Members and shareholders.  The Summary Notice, which summarizes the essential Settlement terms and informs readers how to

obtain the full Notice, will be published once in *Investor's Business Daily* and transmitted over *Business Wire*.

This notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court. *See Barone*, 2005 WL 2009882, at *6; *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'")

## CONCLUSION

For the foregoing reasons, the Class Representative respectfully requests that this Court preliminarily approve the proposed Settlement, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order submitted herewith.

Dated: New York, New York
       September 24, 2008

Respectfully submitted,

LABATON SUCHAROW LLP

By: _____/s/ Mark S. Arisohn_____

Mark S. Arisohn (MA-2364)
Christopher Keller  (CK-2347)
Jonathan Gardner (JG-8512)
Nicole M. Zeiss (NZ-3894)
140 Broadway
New York, New York 10005
Tel.:  (212) 907-0700
Fax:  (212) 818-0477

*Class Counsel for Middlesex County Retirement System as Class Representative and the Class*